Marguerite T. TOBIN and Kathryn M. Tobin, an incompetent, by Marguerite T. Tobin, her next friend, Petitioners,

v.

UNITED STATES RAILROAD RETIRE-MENT BOARD, Respondent.

No. 14241.

United States Court of Appeals
Sixth Circuit.

Feb. 9, 1961.

Jon R. Waltz, Cleveland, Ohio (Walter E. Thayer, Conneaut, Ohio, and James C. Davis, Cleveland, Ohio, on the brief), for petitioners.

Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, Chicago, Ill. (David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Board, Paul M. Johnson and Richard F. Butler, Chicago, Ill., on the brief), for respondent.

Before MILLER, CECIL and WEICK, Circuit Judges.

CECIL, Circuit Judge.

This case is before the court on petition for review of a decision of the United States Railroad Retirement Board.

The petitioners, Marguerite T. Tobin and Kathryn M. Tobin, an incompetent, by Marguerite T. Tobin, her next friend, are the daughters of Richard M. Tobin, hereinafter sometimes referred to as the employee. He was born on April 20, 1870, and after many years' employment with the Bessemer and Lake Railroad Company, retired on April 20, 1940. He

was awarded an annuity under the Railroad Retirement Act of 1937, Title 45 U.S.C.A. § 228a et seq., as amended, in the monthly amount of ninety-eight dollars. This annuity began on April 21, 1940 and on July 1, 1948 was increased to one hundred seventeen and 60/100 dollars.

At the time of his retirement, the employee was living with his wife and daughter Marguerite, in North Bessemer, Pennsylvania. The daughter Kathryn had long been an inmate of the State Hospital, at North Warren, Pennsylvania. On May 22, 1940, he informed the Board of a change of address to 475 State Street, Conneaut, Ohio.

Upon complaint of the daughter Marguerite, he was committed as a paying patient to the Ashtabula County Home, in Kingsville, Ohio, June 19, 1948. He was then seventy-eight years old and according to the complaint had "aged mentally" and "was continuously firing the furnace". She feared for the safety of herself and mother.

On January 4, 1949, the employee's wife died and on the following day the superintendent of the home took him to Ashtabula to view his wife's remains. While being returned to the home, he overpowered the superintendent, jumped out of the automobile and escaped. He was apprehended later the same day by Conneaut police and returned to the county home.

The next day Mr. Tobin left the home, without permission, and was never seen nor heard of again. An intense search was made by police, firemen, the county sheriff, Boy Scouts, and other volunteers, but no trace of him was found. The daughter, in the vain hope of finding her father, hired an airplane and pilot to fly over the countryside at low altitudes, but this produced no result. The Salvation Army, without success, advertised the employee's disappearance in its newspapers. His body was never found and he never communicated with his daughter, the Retirement Board, the home or anyone else. It was reported that a person, answering the employee's description, was observed boarding a bus at a highway intersection near the Ashtabula County Home.

At the time of his disappearance, he had some money in his possession and carried identification on his person. He was "able-bodied," "strong and husky" and "physically very powerful for his age."

On or about November 14, 1950, Marguerite notified a representative of the Board, that she wished to have her father's annuity checks mailed to her address at 625 Buffalo Street, Conneaut, Ohio. She also said that her father had been "missing" since January 6, 1949, and that she had deposited the checks in a joint account of her and her father, at the Citizens Savings Bank, Conneaut, Ohio. In 1951 she told the Board's representative that she had kept the payments in the hope that her father was alive and that he would request a change of address and that she could get in touch with him.

The daughter was instructed on June 4, 1951, to return the payments that had been made from January 1949 to October 1950. No payments had been made after that time. Under date of June 13, 1951, she refunded the payments, as requested, amounting to $2,587.20.

On August 14, 1956, Marguerite, on behalf of herself and sister Kathryn, filed an application for "Lump-Sum Death Payment and Annuities Unpaid at Death." She recited that the employee died July 6, 1956, at an unknown place. She submitted with her application an order of the Probate Court, of Ashtabula County, Ohio, dated July 6, 1956, reciting that the presumption of death had been established. This is in accordance with Section 2121.01 et seq., of Ohio Revised Code.

These claims were successively denied by Bureau of Retirement Claims, April 22, 1957, Appeals Council, June 27, 1958, and the respondent herein, Railroad Retirement Board, June 2, 1959.

Counsel for the petitioners claim that the issues herein are governed by Ohio law, by reason of the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. That case involved diversity of citizenship. The suit now before us is based on a federal statute, is brought in a federal court and is against a federal agency. We do not consider Erie R. Co. v. Tompkins applicable, or that this controversy is controlled by Ohio law. American Textile Machine Corp. v. United States, 6 Cir., 220 F.2d 584, 587.

At common law there was a rule of presumption of death which is briefly and concisely stated in Rice v. Lumley, 10 Ohio St. 596, 598: "When a man leaves his home or usual place of residence, and goes to parts unknown, and is not heard of or known to be living for the period of seven years, the legal presumption arises that he is dead."

It is claimed, on behalf of the petitioners, that the employee must be presumed to be living until the end of the seven years. The respondent claims, first, that he died during the first month of his unexplained absence, and, second, that the burden is on the petitioners to show that the employee was living throughout the period for which they seek recovery.

The Supreme Court, in an early case (1878), recognized the common law rule. In Davie v. Briggs, 97 U.S. 628, 633, 24 L.Ed. 1086, the rule was stated: "The general rule undoubtedly is, that 'a person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death.' Stephen, Law of Evid., c. 14, art. 99; 1 Greenl.Evid., sect. 41; 1 Taylor, Evid., sect. 157, and authorities cited by each author."

It is further stated at page 634 of 97 U.S.: "But that presumption is not conclusive, nor is it to be rigidly observed without regard to accompanying circumstances which may show that death in fact occurred within the seven years. If it appears in evidence that the absent person, within the seven years, encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased before the expiration of the seven years."

It has also been held that if the missing person had manifested a strong inclination or purpose to commit suicide, death might be inferred at or about the time of the disappearance. United States v. O'Brien, 4 Cir., 51 F.2d 37.

There is some authority to the effect that if a person had no reason to leave home and every reason to remain at home, death might be inferred from his disappearance. United States v. Hayman, 5 Cir., 62 F.2d 118.

In Mr. Tobin's case, there is no evidence of any apparent peril or danger, no indication that he ever contemplated suicide, and from the facts of the case it would seem that he had every reason to escape from the institution where he was confined. His wife was dead, his daughter Marguerite had caused his confinement in the county home and his daughter Kathryn was in a state hospital with a disease diagnosed as "schizophrenia, hebephrenic type."

The Board's finding that "The employee died in January 1949" is not supported by any evidence. Sections 228k, 355, Title 45 U.S.C.A.

In Davie v. Briggs, supra, the court quoted Mr. Taylor as follows: "Mr. Taylor, in the first volume of his Treatise on the Law of Evidence (sect. 157), says, that 'although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; and, therefore, *if any one has to establish the precise period during those seven years at which such person died, he must do so by evidence*, and can neither rely, on the one hand, on the presumption of death, nor,

on the other, upon the presumption of the continuance of life.'" (Emphasis added.) See also: McCune v. United States, 6 Cir., 56 F.2d 572; In re Chicago & N. W. Ry. Co., 7 Cir., 138 F.2d 753, certiorari denied sub nom. Roth v. Carlson, 321 U.S. 789, 64 S.Ct. 788, 88 L.Ed. 1079; Westphal v. Kansas City Life Ins. Co., 7 Cir., 126 F.2d 76, certiorari denied 316 U.S. 705, 62 S.Ct. 1308, 86 L.Ed. 1773; Browne v. New York Life Ins. Co., 8 Cir., 57 F.2d 62; In re McWilson's Estate, 155 Ohio St. 261, 268, 98 N.E.2d 289.

■ It becomes important then whether the respondent must prove that death occurred at a certain time or if the petitioners must prove life throughout the seven years.

The employee had established his right to his annuity at the time of his retirement in 1940. So far as the facts of this case are concerned, nothing but proof of death could have justified the Retirement Board in terminating the annuity.

In order to terminate the annuity, it was incumbent upon the Board to fix the precise time of death. Otherwise it would not have any basis for its termination. The Board recognized this in attempting to find that death occurred during the first month of absence. The burden was thus on the Board to establish its right to end the annuity relationship.

Counsel for the respondent have cited some Social Security cases to support their theory of burden of proof. Irvin v. Hobby, D.C.N.D.Iowa 1955, 131 F.Supp. 851, 865; Adams v. Flemming, 2 Cir., 1960, 276 F.2d 901; Norment v. Hobby, D.C.Ala.1954, 124 F.Supp. 489. In these cases the annuitants had to initially establish their claim for an annuity. These cases are not in point. The employee in the case at bar had many years before established his right to his annuity.

While in Davie v. Briggs, supra, and two cases there cited (Spencer v. Moore, 11 Ired. 160, 33 N.C. 160; Spencer v. Roper, 13 Ired. 333, 35 N.C. 333), it is stated that no presumption arises as to

the time of death, they leave the inference that it must be at the end of seven years, since evidence is required to establish that death occurred earlier than that.

The trend of the American cases, both federal and state, is toward the conclusion that, if there is no evidence to show that death occurred earlier, it is presumed not to have occurred until the end of the seven years.

In Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 316, 22 S.Ct. 662, 665, 46 L.Ed. 922, the court approved a jury instruction as follows: "While death may be presumed from the absence, for seven years, of one not heard from, where news from him, if living, would probably have been had, *yet this period of seven years during which the presumption of continued life runs, and at the end of which it is presumed that life ceases*, may be shortened by proof of such facts and circumstances connected with the disappearance of the person whose life is the subject of inquiry, and circumstances connected with his habits and customs of life, as, submitted to the test of reason and experience, would show to your satisfaction by a preponderance of the evidence that the person was dead." (Emphasis added.)

In English v. United States, D.C., 25 F.2d 335, 337, the court said: "The ordinary presumption is that life continued during the seven-year period, and the circumstances of this case do not so materially quicken the operation of time." Cited with approval in United States v. O'Brien, 4 Cir., 51 F.2d 37, 42, and United States v. Willhite, 4 Cir., 219 F.2d 343, 346. See also: In re Chicago & N. W. Ry. Co., 7 Cir., 138 F.2d 753, certiorari denied sub nom. Roth v. Carlson, 321 U.S. 789, 64 S.Ct. 788, 88 L.Ed. 1079; Brotherhood of Locomotive Firemen & Engineers v. Nash, 144 Md. 623, 125 A. 441.

Section 108(b) of Title 38 U.S.C., referring to veterans' benefits provides that after seven years continued and unexplained absence, the death of an individual *as of the date of the expiration* of

**484**

the period shall be sufficiently proved. While this statute is in no way applicable to the case at bar, it shows the trend of present day construction of the rule of presumption of death. This was a codification of the cases in order to make applicable law in insurance cases uniform. United States v. Willhite, supra.

There being no evidence that the employee died before the expiration of the seven-year period of absence, we conclude that the petitioners are entitled to recover the unpaid monthly payments of the annuity, as of the expiration of seven years after the disappearance, together with the lump-sum death payment provided by statute.

The judgment of the Railroad Retirement Board is hereby reversed and the case remanded to that Board for further action consistent with this opinion.