**Hortentia R. ACOSTA**

v.

**The UNITED STATES.**

**No. 82–62.**

United States Court of Claims.

July 12, 1963.

William M. Apgar, La Mesa, Cal., for plaintiff.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DAVIS, Judge.

Luis F. Acosta, plaintiff's husband, disappeared on February 10, 1950, from his home in San Diego, California, and has not since been heard of or seen. When he vanished he was a retired naval enlisted man drawing retirement pay of $181.50 per month. After her husband had been gone for seven years, the plaintiff sought from a California state court a decree that he was legally dead. That court, on February 7, 1958, declared that Luis Acosta "be and hereby is declared legally dead", without expressly indicating when the death occurred. Plaintiff was also designated administratrix of his estate.

In her own right, plaintiff applied to the Veterans Administration for death benefits as Luis's unremarried widow. Under the Act of June 5, 1942, 56 Stat. 325, as amended (now 38 U.S.C. § 108, formerly 38 U.S.C. § 810), that agency may find that death occurred at the end of a seven-year period of continued and unexplained absence. See Peak v. United States, 353 U.S. 43, 45, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957). Accordingly, on February 27, 1959, the Veterans Administration determined that "the death of Luis F. Acosta as of February 11, 1957 may be considered as sufficiently proved"; death benefits of $50.40 per month were awarded to plaintiff from February 28, 1958.[1]

As representative of her husband, plaintiff brought this suit on March 19, 1962, for the retirement pay (over $17,-000) due to him, if he were alive, from the time of his disappearance in Febru-

---

1. Under the Veterans Administration practice, a widow may draw her pension from the date of her veteran-husband's death only if she files her application within one year of his death; otherwise she receives the pension from the date of filing.

Plaintiff made her application on February 28, 1958, more than one year after the day determined by the V. A. as the date of Luis's death, i. e., February 11, 1957. Her pension began to run from the filing date.

ary 1950 to February 7, 1958, the date of the California decree. The Government opposes on two grounds: first, that plaintiff cannot show that Luis was alive during 1950–1958; and, second, that the statute of limitations bars recovery of all sums payable before March 1956 (six years prior to the commencement of the action). Agreeing that the facts are undisputed and that a trial would produce no further relevant evidence, the parties have both requested summary judgment.

■ To recover in this suit for naval retirement pay due to her husband, plaintiff must prevail in her contention that he was alive during the period for which she sues since such retirement compensation is payable only while the recipient lives. See 9 Comp.Gen. 111 (1929); 16 Comp.Gen. 384 (1936). The first defense is that she cannot make her case because the known facts make it probable that Luis died in 1950 shortly after his disappearance, or if that is not so because she is unable to show at what point in the span of years from 1950 to 1958 he did die. We are persuaded by neither hypothesis.

Several rather thorough investigations were made after Luis's disappearance in February 1950 but little was uncovered to prove that he died at or shortly after his disappearance, or at some particular subsequent moment. He apparently resigned in February 1950 from his civilian job as a painter at the Naval Air Station in San Diego (without telling his wife) and announced that he was going to Puerto Rico, where he had been born and had lived until he was seventeen. Just before he disappeared he was arrested in San Diego for drunkenness and then released. He had cashed an insurance refund check of $500 and apparently also held a retirement-pay check. There is some indication that on his release from jail he was headed for Tijuana, Mexico, with a substantial amount of money. He had been married to plaintiff since 1928 and had four children; there appears to have been considerable marital friction; he drank to excess at times and occasionally left his home for several days, including some forays into Mexico; he also seems to have spoken from time to time of returning to Puerto Rico without his wife; close associates of his indicated, however, that at bottom he had a high regard for his family and would be unlikely to abandon them permanently. He maintained close relationships with sisters in New York and in Puerto Rico, and in their view would have continued to keep in touch if he remained alive.

■■ All this might add up to enough evidence to support a jury verdict that Luis Acosta died in 1950 shortly after his disappearance,[2] but it does not convince us, as the triers of fact, that that is what happened. There is a rather pointed suggestion in the record that he contemplated cutting his family ties; on the other hand there is little showing of a distinct peril or danger encountered after the disappearance. Those factors are sufficient for us to hold that the presumption of continued life has not been overcome. The federal rule, as we understand it, leaves the trier of fact free to rely on that presumption if the known circumstances are not strong enough for an affirmative finding that death occurred at some specific time. Cf. Peak v. United States, 353 U.S. 43, 45–46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957); United States v. Willhite, 219 F.2d 343 (C.A.4, 1955); Tobin v. United States Railroad Retirement Board, 286 F.2d 480 (C.A.6, 1961);

2. Plaintiff applied, on February 27, 1961, to the Board for Correction of Naval Records to have Luis's day of death established as seven years after his disappearance. This application was summarily denied on February 8, 1962. We do not know the basis of the Board's action, or whether it was founded on a determination of the facts. In any event, the plaintiff had the right to sue in this court without exhausting any administrative remedy and her resort to the Correction Board does not affect her claim here. Cf. Friedman v. United States, Ct. Cl., No. 377–60, decided Nov. 7, 1962, 310 F.2d 381, 395, cert. denied Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691; Haislip v. United States, Ct.Cl., Nos. 442–59, 466–59, 439–59, decided Jan. 18, 1961, 296 F.2d 469.

Jones v. United States, 266 F.2d 654 (C. A.5, 1959).

Defendant answers, however, that Mrs. Acosta—who has the double burden of proving that her husband remained alive for many years but was dead by the time she filed her petition—can rely on the legal presumptions relating to death only to show that her husband was dead by the end of the seven years (February 1957) or by the time of the California decree (February 1958), but not to support the position that his death occurred at the close of one or the other of those periods (rather than sometime earlier). The Supreme Court did at one time recite this, *obiter*, as the correct rule (Davie v. Briggs, 97 U.S. 628, 634, 24 L.Ed. 1086 (1878)),[3] but we think the federal law has developed differently—at least for claims against the Government. In Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 316, 317, 22 S.Ct. 662, 46 L.Ed. 922 (1902), a private case, the Court approved jury instructions that the presumption of continued life runs for the full seven-year span. In English v. United States, 25 F.2d 335, 336–337 (D. Md., 1928), Judge Soper accepted the same standard in a World War I war risk insurance case. So did the Courts of Appeals in United States v. O'Brien, 51 F.2d 37, 42 (C.A.4, 1931), and McCune v. United States, 56 F.2d 572, 573 (C.A.6, 1932) (semble).[4] Most significant is the Veterans Administration's statute enacted in 1942, providing expressly that the presumption of death arises at the *end* of the seven-year period. This Act does not apply directly to other agencies or to this case, but it does control a large, perhaps the largest, portion of the federal claims which turn on the presumption of death (and the converse presumption of continued life). It represents, too, the legislative judgment as to how those presumptions shall be utilized. There is very good reason for the different branches and units of the Federal Government to apply the same general standard, so as to avoid inconsistent and varied results stemming from dissimilar rules of presumption. For instance, if the Veterans Administration held, under its presumption, that a death occurred at the close of the seven-year period, while this court, using a different criterion, ruled that it occurred earlier, there could well be an unfortunate gap in the interrelated chain of life and death benefits Congress has created for military personnel.[5] We follow the lead, therefore, which Congress has given, and hold that in pay claims against the Federal Government the normal presumption should be that death occurred at the end of a seven-year period of continued and unexplained absence.[6] This presumption is not conclusive, of course, and either party is free to prove an earlier time of death. But in the absence or insufficiency of such proof the fact-finding tribunal should determine that the individual died at the close of the period.

Since the affirmative evidence as to the time of Luis Acosta's death is so inadequate, the plaintiff can properly stand on the presumption that he re-

3. The Court actually *held* no more than that the presumption is inconclusive and was clearly rebutted by the affirmative evidence in that case.

4. But see the general statements in United States v. Hayman, 62 F.2d 118, 119 (C.A. 5, 1932), and Howard v. United States, 28 F.Supp. 985–986 (W.D.Wash., 1939).

5. Under 28 U.S.C. § 1501, this court does "not have jurisdiction of any claim for a pension" such as the claim of an unremarried widow (like plaintiff) for benefits from the Veterans Administration. See Title 38, U.S.C., Chap. 15 ("Pension for Non-Service-Connected Disability or Death or for Service"), including Subchapter III ("Pensions to Widows and Children").

6. In Tobin v. United States Railroad Retirement Board, supra, 286 F.2d at 483–484, the Sixth Circuit—saying that "[t]he trend of the American cases, both federal and state, is toward the conclusion that, if there is no evidence to show that death occurred earlier, it is presumed not to have occurred until the end of the seven years", and citing the analogy of the Veterans Administration statute—applied the end-of-the-seven-year presumption to annuities under the Railroad Retirement Act.

mained alive for seven years, i. e., until February 11, 1957. She erroneously claims a further year because the California court did not issue its decree until February 1958. It is clear that that order, based on proof of seven years' absence, did not mean that her husband remained alive until the entry of the decree. That particular day is wholly irrelevant.

■ The last question is whether any part of plaintiff's recovery is time-barred. If she is restricted to the six-year period preceding her petition in this court (filed on March 19, 1962), she can receive her husband's retirement pay only for the few months from March 1956 to February 1957. We hold, however, that her claim first accrued in February 1957, when her husband died (as we now know) and when she could first sue as his representative—and that she is entitled to recover all of his unpaid retirement from February 1950 to February 1957. This follows directly from the ruling in Peak v. United States, 353 U.S. 43, 45, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957). Applying the Veterans Administration's presumption statute, the Supreme Court held that, in a case where there is reliance on the presumption, a claim on a National Service Life Insurance policy accrues at "the end of the seven-year period when the presumption of death arose." See also, to the same effect, United States v. Willhite, 219 F.2d 343, 348–350 (C.A.4, 1955). Having adopted the same presumption for the present class of case, we should likewise choose the same rule on limitations.

Moreover, this case calls more strongly than Peak for fixing the start of limitations at the end of the seven-year period. There, the dissent suggested that the beneficiary, if he had no evidence of actual death during the seven years, could keep the insurance policy alive and also protect himself against possible proof of death within the period by filing suit on the policy within six years of the insured's disappearance. Those precautions could not avail in a case of the kind before us. If Mrs. Acosta had sued in this court between 1950 and 1956 for her husband's retirement pay, the defendant would undoubtedly (and properly) answer that there was no showing and no presumption that Mr. Acosta was dead; his wife would have no right to sue on his behalf, even if he were absent, since during his lifetime the right to the pay was his alone. In ordinary course, her suit would have been dismissed. To hold her likewise precluded if she waited, as she did, until she could rest on the seven-year presumption would mean that part of the husband's retirement pay could never be recovered, no matter how diligent or careful she might be. The only way that full recovery could be safeguarded would be for this court to allow an improper suit by the wife, brought before the end of the seven-year period, to remain on its docket until another action could be instituted after the presumption period. That device commends itself far less than the proposition that *plaintiff's* claim for the whole sum (as distinguished from her husband's claim) first accrued in February 1957, with the lapse of seven years after her husband's disappearance and the emergence of the presumption of death on which she relies.[7]

The parties have not agreed upon the exact sum due plaintiff under the standard we adopt. Unless they can stipulate the amount, there will have to be further proceedings. Defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted. Judgment is entered for plain-

---

7. If the defendant had been able to counterbalance the presumption by proving that Acosta died well before the end of seven years, plaintiff would be limited to recovering only the retirement pay due prior to his death, as proved in court.

Since the defendant knew that Acosta was missing and had not cashed his retirement checks—and is likely to have similar knowledge in almost all cases of this type—it has an adequate opportunity during the seven-year period to collect information bearing on the man's disappearance and possible death.

tiff. The amount of recovery will be determined under Rule 38(c).

JONES, Chief Judge (dissenting in part).

I agree with much that is said in the majority opinion, but I do not agree that plaintiff is entitled in the circumstances of this case to recover all of the deceased's unpaid retirement from February 1950 to February 1957. In order to recover on this basis the burden is on plaintiff to establish by competent evidence that plaintiff's husband remained alive during the 7 years prior to 1957. The evidence is not sufficient to justify that conclusion.

On the other hand the admitted facts are not sufficient in this case to justify a finding that plaintiff's husband died at any specific date prior to the end of the 7-year period. The burden is on plaintiff to establish her right to recover. In the case of Davie v. Briggs, 97 U.S. 628, 634, 24 L.Ed. 1086 (1878), the Supreme Court on the question of the 7-year presumption of death uses the following language:

"If it appears in evidence that the absent person, within the seven years, encountered some specific peril, or within that period came within the range of some impending or immediate danger, which might reasonably be expected to destroy life, the court or jury may infer that life ceased before the expiration of the seven years. Mr. Taylor, in the first volume of his Treatise on the Law of Evidence (sect. 157), says, that 'although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; and, therefore, if any one has to establish the precise period during those seven years at which such person died, he must do so by evidence, and can neither rely, on the one hand, on the presumption of death, nor, on the other, upon the presumption of the continuance of life.' These views are in harmony with the settled law of the English courts. [Citing cases.]"

The other cases cited in the majority opinion on this point refer to veterans' insurance cases under a specific statute which is inapplicable here. Therefore it follows that the evidence in this case is not sufficient to prove the death prior to the end of the 7-year period nor is it sufficient to prove that it occurred at any specific date during the 7-year period.

However, the evidence and presumptive facts show clearly that one or the other existed. In other words, plaintiff's husband was either dead or alive during the 7-year period. That conclusion is inescapable.

Therefore it follows that while the admitted facts, which both parties agree are all of the known facts, do not establish either horn of the dilemma, they establish beyond cavil that one or the other existed. Therefore, plaintiff is entitled to recover on one or the other basis. Since neither one nor the other can be found from the facts presented, the defendant is entitled to have any judgment rendered in favor of the plaintiff on the basis of the lesser of the two amounts. It follows logically that plaintiff should be permitted to recover the death benefits of an unmarried widow during the 7-year period.[8]

---

**8.** Such death benefits are in no sense pensions which are excluded from the jurisdiction of the Court of Claims by 28 U.S.C. § 1501 or excluded from the jurisdiction of the District Courts by 28 U.S.C. § 1346(d) (1).

It has been repeatedly held it was intended by the Congress merely to exclude the granting of pensions over which the United States Pension Bureau or the Veterans Administration has jurisdiction. Johnson v. United States, 111 Ct.Cl. 750, 79 F.Supp. 208 (1948); Lemly v. United States, 109 Ct.Cl. 760, 75 F.Supp. 248 (1948).

These are not pensions in the sense of sections 1501 and 1346, but are retirement matters and incidental death benefits over which both the Court of Claims and the United States District Courts have continuously exercised jurisdiction.

What they may have been called is not

I agree with the reasoning of the majority opinion that plaintiff could not have sued prior to the end of the 7-year period, at which time the presumptive death became effective. I agree, therefore, that plaintiff's claim did not first accrue until February 1957.

I, therefore, would permit plaintiff to recover the unmarried widow's death benefits for the entire 7-year period. The amount should be determined as in the majority opinion under Rule 38(c).

determinative. Even if it were a pension in fact, the plaintiff's right to it has already been determined by the proper agency. The only matter left is the legal issue as to when the established obligation becomes effective.

In addition, the courts have uniformly held that when a court has legally taken jurisdiction of a subject matter it may retain it for the purpose of determining all phases of the case. There is no doubt that the court has jurisdiction of retirement cases which is the primary issue involved here. It may retain that jurisdiction to accord full justice and thus avoid a multiplicity of lawsuits.