304 So.2d 690 (1974)
Joseph Harris FONTENOT et ux., Plaintiffs-Appellants,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al., Defendants-Appellees.
No. 4792.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1974.
Rehearing Denied January 9, 1975.
Writ Refused February 14, 1975.
Preston N. Aucoin, Ville Platte, for plaintiffs-appellants.
Jack C. Fruge, Sr., Ville Platte, for defendants-appellees.
Before HOOD, CULPEPPER and WATSON, JJ.
HOOD, Judge.
Mr. and Mrs. Joseph Harris Fontenot instituted this suit for damages for the alleged wrongful death of their son, Carl Brent Fontenot, who was killed when struck either by a hit and run motorist or by an automobile being driven by Mark Shuff. The defendants are (1) Southern Farm Bureau Casualty Insurance Company, the liability *691 insurer of Shuff, and (2) State Farm Mutual Automobile Insurance Company, the uninsured motorist insurer of plaintiffs.
Judgment was rendered by the trial court in favor of plaintiffs against State Farm (the uninsured motorist insurer) for $5,000.00. State Farm has paid the full amount of that judgment, and it has been discharged from any further liability. Judgment also was rendered in favor of defendant Southern Farm (the liability insurer of Shuff), rejecting plaintiffs' demands against that defendant. Plaintiffs have appealed solely from that part of the judgment which rejects their demands against Southern Farm.
The principal issue presented is whether young Fontenot's death resulted from being struck by the Shuff vehicle or from being struck earlier by a hit and run driver. If his death is found to have resulted from being struck by Shuff's automobile, then a determination must be made as to whether Shuff was negligent.
The accident involving the Shuff automobile occurred about 4:20 A.M. on August 26, 1972, on Louisiana Highway 10 in Evangeline Parish. The highway at that point is a two-lane, level, hard surfaced highway running generally east and west. There was a slight curve in the roadway there, but the accident cannot be attributed in any way to that curve. The surface of the highway was dry, but it was foggy and visibility was substantially restricted by the fog at the time of the accident.
Immediately before the above accident occurred Shuff was driving his relatively new automobile east on Highway 10 at a speed of about 40 miles per hour. He reduced his speed slightly to cross a railroad spur track, and as he was picking up speed again he saw an object on the highway, in the middle of his lane of traffic, about 30 or 40 yards ahead of him. He testified that the object looked like "some old rags," or "an old dog" or "just a piece of trash." He reduced his speed to about 25 or 30 miles per hour as he approached that object, but he remained in his lane of traffic. When he reached a point six or seven feet from the object, he noticed that it was a human being lying in the road. Shuff stated that he applied his brakes as soon as he saw that it was a human body, but that he was then "right on top of it" and was unable to avoid running over it. The person lying on the highway was young Fontenot, plaintiffs' 16 year old son.
Shuff did not stop immediately after running over the Fontenot boy, but instead he continued to drive a short distance east to a driveway, and then he turned around and drove back to the scene of the accident. He found that the body of plaintiffs' son had come to rest partially on the south shoulder and partially on the east bound lane of traffic of the highway. After stopping and viewing the body in that position for a few seconds, but without geting out of his automobile, Shuff drove to the Golden Spur Lounge located a short distance west of the scene of the accident, his purpose being to report the accident. The lounge was closed, but Shuff obtained permission from someone in the building to use the telephone. Shuff then called the Evangeline Parish Sheriff's Department and the home of the Chief Deputy, Aaron Fusilier, and informed them of the accident. He then returned to the place where the body of young Fontenot lay on the highway.
State Trooper Charles Manuel, Deputy Fusilier and Dr. Wayne LaHaye, the assistant coroner, arrived at the scene of the accident shortly after the above mentioned telephone calls were made. An examination made by the doctor revealed that young Fontenot had sustained multiple injuries and that he was dead when that examination was conducted.
An investigation made by Trooper Manuel and others revealed facts which indicated that young Fontenot had been struck by an unidentified vehicle before the above mentioned accident occurred. Some skid marks were found in the east bound lane of traffic, beginning at a point 369 feet *692 west of the place where Fontenot's body ultimately came to rest and extending eastward a distance of 80 feet, gradually angling to the right to a point where the southernmost track ended on the south shoulder of the highway. At the place where the skid marks on the shoulder ended, a "grip" tire track began and it continued east a short distance and then it veered back onto the hard surfaced slab. Trooper Manuel testified that the Shuff automobile could not have made those skid marks since it was not equipped with "grip" tires, and he felt that the same vehicle which had made the tire tracks had also made the skid marks.
Along the route of the above mentioned skid marks the investigating officers found imbedded in the highway some materials which matched the decedent's socks and clothes. Two shoes, pieces of a shoe buckle, some human teeth and particles of flesh were found in the area of the skid marks. A fresh pool of blood was found about 69 feet west of the body. All of this evidence tended to show that the decedent was struck by another vehicle equipped with "grip" tires before his body was struck by the Shuff vehicle.
The shoes were not identified as belonging to the decedent, and the evidence did not show whether the blood found on the highway 69 feet west of his remains had come from the decedent's body. Tests conducted at the Louisiana State Crime Laboratory in Baton Rouge showed that the belt and clothes worn by the decedent contained flakes of gray, green and blue paint. Shuff's car was brown in color, and expert testimony indicated that the paint flakes did not come from the Shuff automobile.
The trial judge did not assign reasons for judgment, but it is apparent that he concluded that the decedent was struck by an unknown vehicle before the Shuff automobile ran over him, and that his death resulted from the first accident, or at least that the injuries he received in the first accident contributed to his death. The trial judge also must have concluded either that young Fontenot was not alive when his body was struck by the Shuff automobile, or that Shuff was not negligent.
Plaintiffs argue on this appeal that young Fontenot was alive when he was struck by the Shuff vehicle, and that his death thus must be attributed to that accident. They contend that there is a legal presumption that life, like any other condition, continues until there is evidence to the contrary. They take the position that young Fontenot was not determined to be deceased until after he had been struck by the Shuff vehicle, and that he thus must be presumed to have been alive at the time that accident occurred.
Defendant Southern Farm argues that the presumption of the continuation of life is not applicable here because there is evidence to the contrary. It contends that Dr. LaHaye examined Fontenot about ten minutes after he was struck by Shuff, and that he concluded that the boy died at least 30 minutes before that examination was made. According to defendant's interpretation of the evidence, therefore, young Fontenot died at least 20 minutes before being struck by the Shuff vehicle. Defendant also argues that the trial judge must have found that Fontenot died before the second accident occurred, since he absolved Shuff's insurer from liability, and it invokes the established rule that the factual findings of the trial judge are entitled to great weight and should not be disturbed unless found to be clearly erroneous.
We agree with the trial judge that young Fontenot was struck by an unknown vehicle before he was run over by the Shuff automobile. We do not believe the evidence establishes, however, that Fontenot died before he was struck by Shuff, and we do not think the judgment rendered in the district court necessarily indicates that the trial judge found that to be the case.
The accident occurred at about 4:20 A.M. Dr. LaHaye stated that he reached the scene of the accident about 4:30 A.M., but *693 he also testified that Trooper Manuel was there and assisted him in examining the decedent. Trooper Manuel confirmed the fact that he assisted Dr. LaHaye in making the examination. He testified, however, that the accident was not reported to him until 5:00 A.M., that he was at his home in Eunice at that time, and that he did not reach the scene of the accident until 5:15. He later checked the log book at the Sheriff's office and found that his recollection as to those times was correct. Considering the events which transpired after the accident occurred, and the distances the parties had to travel in the fog in order to get to the scene of the accident, we believe that Trooper Manuel's testimony as to the time when the examination of the decedent's body was made by the coroner is correct. We thus find that Dr. LaHaye examined the decedent at least 55 minutes after the latter's body was struck by the Shuff automobile.
Dr. LaHaye concluded that the decedent had been dead at least 30 minutes and not more than 90 minutes before his examination was made. He based that conclusion on several findings, one being that a pool of the decedent's blood had not coagulated and was still in a liquid state when the examination was made, indicating that his death had occurred shortly before that time. We consider the medical evidence to be inconclusive as to whether young Fontenot died before or after he was struck by the Shuff vehicle. In our opinion, Dr. LaHaye's findings do not show that young Fontenot died before his body was struck by the Shuff automobile.
In American Sugar Refining Co. v. Ned, 209 F.2d 636 (5th Cir. 1954), a case originating in the U. S. District Court for the Eastern District of Louisiana, a laborer who had complained of being sick fell from a barge into the river, and his dead body was recovered several days later. A question was presented as to whether he died of natural causes before he fell, or whether his death resulted from an accidental injury suffered during the course of his employment. The court observed that there is a presumption in favor of the continuation of life until the contrary is shown, and it held that "[t]he death was accidental even though the man might have died a few minutes later from natural causes if he had not met with the accident." The court said:
"There is a presumption in favor of the continuation of life until the contrary is shown."
In Bowman v. Redding and Company, 145 U.S.App.D.C. 294, 449 F.2d 956 (1971), the court said:
"We conclude that this case is governed by the general guiding principle that a plaintiff's claim that his decedent's life continued, until terminated as a result of defendant's negligence, presents a question for the jury. The principle is undergirded by the more broadly applicable doctrine that in cases where the time of death is uncertain, there is a presumption of continuation of life.
"`The federal rule, as we understand it, leaves the trier of fact free to rely on that presumption if the known circumstances are not strong enough for an affirmative finding that death occurred at some specific time.'"
We believe that the rule applied in the cited cases is applicable here. Our view is that where the time of death is uncertain, a legal presumption exists in favor of the continuation of life, until evidence is presented sufficient to establish that death occurred at some specific time or until a presumption of death established by law attaches. See Acosta v. United States, 320 F.2d 382, 162 Ct.Cl. 631 (1963); United States v. Rees, 193 F.Supp. 849 (D.Md.1961); Sassman v. Aime and Wife, 9 Mart. (O.S.) 257 (1821); Owens v. Mitchell, 5 Mart. (N.S.) 667 (1827); Hayes v. Berwick, 2 Mart. (O.S.) 138 (1812); Jones v. Chicago, R. I. & P. Ry. Co., 162 La. 690, 111 So. 62 (1926); Quaker *694 Realty Co. v. Starkey, 136 La. 28, 66 So. 386 (1914).
In the instant suit Pierre Catoire, Jr. testified that he was with the decedent at the Golden Spur Lounge from 1:30 until after 3:00 A.M. on the date the accident occurred, during which time the decedent drank two or three beers. Catoire left the lounge about 3:10 that morning, and he stated that young Fontenot was still there when he left. Fontenot thus is shown to have been alive at that time. The evidence in the record indicates that the decedent was next seen by Shuff just before the second accident occurred at 4:20 A.M. He was lying in the travelled part of Louisiana Highway 10 at that time. Fontenot was examined and found to be deceased about 5:15 A.M.
A blood test revealed that Fontenot's blood contained .22% alcohol at the time of his death. Dr. LaHaye testified that the blood alcohol level of .22% was sufficient to bring about a loss of consciousness or a stupor in a male about the size and age of the decedent. Shuff testified that the decedent did not move during the brief moment Shuff saw him lying in the highway before the accident occurred. It would be as reasonable to assume, however, that he was unconscious at that time from intoxication or from the injuries he had received in the prior accident, as it would be to assume that he was dead when Shuff first saw him.
In our opinion, the evidence is not sufficient to establish that young Fontenot died prior to the time his body was struck by the Shuff automobile. Applying the presumption of the continuation of life, we hold that he was alive at the time the last mentioned accident occurred. Our ultimate conclusion is that his death resulted from the injuries which he sustained when he was struck by the Shuff automobile.
We now turn to the question of whether Shuff was negligent.
Shuff had been up since 8:00 A.M. the day before the accident occurred. From 10:00 P.M. on that day until the time of the accident he had visited bars or lounges in Mamou and in Ville Platte, and he had a late date in Mamou. He stated that he consumed four or five alcoholic beverages that evening. He left Mamou about 4:00 A.M. to drive back to his home in Ville Platte, and the accident occurred while he was en route to his home.
Shuff stated that his car was new and that the brakes were in good working order. He explained that the fog obstructed his visibility, and that for that reason he had his headlights on dim and he was driving slower than usual. He testified that he nevertheless saw the object in the road, which he later discovered was young Fontenot, when he was a substantial distance from it, and that he could have stopped after he saw that object and before he reached it if he had wanted to.
There was no other traffic on the highway at the time, and Shuff offered no explanation as to why he did not drive to the right or to the left of the object long before he reached it. He stated that he did not want to run into the object, whatever it was, because he "had a brand new car" and he "sure didn't feel like busting it up," and yet he conceded that "I just didn't think about going to the left or the right when I saw the object." It is apparent that he also didn't bother to bring his vehicle to a stop or under control before he reached a point almost "on top of" the decedent. He identified the object as a human body when he was six or seven feet from it, and he explained that he didn't try to go around it then because he thought the wheels of his car would strike it.
Young Fontenot was dressed in a red shirt, blue jeans and red socks at the time of the accident. He was lying on the highway with his back toward Shuff's approaching automobile. The decedent's bright colored clothes made him clearly *695 visible to an approaching motorist, and Shuff admits that he had plenty of time within which to stop after he saw the object in the highway.
Defendant argues that Shuff should be excused from negligence and his insurer should be relieved from liability because Fontenot's body lying on the highway was an unusual or unexpected obstruction, and Shuff had no reason to anticipate that it would be there. To support that argument defendant cites the cases of Sanders v. Eilers, 217 So.2d 205 (La.App. 1 Cir. 1968); and Corkern v. McWilliams, 228 So.2d 236 (La.App. 1 Cir. 1969).
The courts held in the cited cases that under certain circumstances a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which are difficult to discover. Those cases are not applicable here, however, because in the instant suit Shuff admits that he saw the body of young Fontenot on the highway in ample time to permit him to bring his vehicle to a stop before striking it. Since he actually saw the decedent in time to avoid the accident, it is unnecessary for us to determine whether a duty was imposed on him by law to make that observation, or to decide what the effect would be if he had failed to have seen the decedent. We thus find no merit to the last mentioned argument of defendant.
The evidence convinces us that Shuff was negligent in failing to stop before his automobile reached the decedent, or in failing to drive around young Fontenot's body and thus avoid an accident when he had an opportunity to do so. We arrive at that conclusion even though Shuff did not identify the object as being the body of a human being when he first saw it. His negligence in those respects was a proximate cause of the accident. We find that young Fontenot was alive when he was struck by the Shuff vehicle, and we conclude that Fontenot's death resulted from the injuries he sustained in that accident.
The parties stipulated that in the event defendant Southern Farm is held to be liable, the amount of the award should be $10,000.00.
For the reasons herein set out, that part of the judgment appealed from which rejects plaintiffs' demands against Southern Farm Bureau Casualty Insurance Company is reversed, and judgment is hereby rendered in favor of plaintiffs, Mr. and Mrs. Joseph Harris Fontenot, and against defendant, Southern Farm Bureau Casualty Insurance Company, for the sum of $10,000.00, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellee, Southern Farm Bureau Casualty Insurance Company.
Affirmed in part, reversed in part, and rendered.