**BLOSSOM FARM PRODUCTS CO.,**
**Plaintiff,**

v.

**AMTRACO COMMODITY CORPORA-**
**TION, Defendant.**

**No. 70 Civ. 4759 (DNE).**

United States District Court,
S. D. New York,
Civil Division.

Sept. 13, 1974.

Delson & Gordon, New York City, by George Halpern, New York City, of counsel, for plaintiff.

Liebman, Eulau, Robinson & Perlman, New York City, by Steven M. Hochberg, New York City, of counsel, for defendant.

## OPINION

EDELSTEIN, Chief Judge:

Defendant has moved pursuant to Fed.R.Civ.P. 15(a) for leave to amend its answer to assert the statute of frauds as an affirmative defense to the third and fourth causes of action pleaded in the complaint, and if such leave is granted for the court to declare the answer so amended. Additionally, if the answer is declared so amended defendant moves pursuant to Fed.R.Civ.P. 56(b) for summary judgment with respect to the third and fourth causes of action of the complaint. Federal jurisdiction is predicated upon 28 U.S.C. § 1332 (1970) because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $10,000 exclusive of interest and costs.

The complaint alleges that plaintiff is "a food broker and agent engaged in procuring customers for food products processed or imported by others," and

that defendant is "an importer and wholesaler of food products." Plaintiff asserts that it was employed by defendant on or about January 9, 1970 to sell —as broker—substantial quantities of a "butter fat product" which defendant imported from Belgium and various other continental countries. It is further contended that defendant agreed to pay plaintiff a net commission of $.016 per pound of butter fat sold by plaintiff and that plaintiff was to receive the same rate of commission on all re-orders of defendant's product by customers procured by plaintiff. Neither party disputes that there is no written instrument reflecting this alleged agreement.

Plaintiff further alleges that he procured a customer for defendant under this arrangement, namely Whitelawn Dairies, Inc. (Whitelawn or customer) of Brooklyn, New York, and that defendant entered into several transactions with this customer. The first cause of action asserts "that prior to January 20, 1970 the plaintiff, on behalf of the defendant, sold to Whitelawn Dairies, Inc. of Brooklyn, New York, 26 truckloads of approximately 38,500 pounds net each of butter fat products at a price of $.215 per pound." Plaintiff acknowledges that he was paid his commission for 20 of the 26 truckloads of the butter fat product delivered by defendant to the customer, but that defendant has failed to pay plaintiff its commission, after plaintiff has duly demanded payment, for the remaining six truckloads of the product delivered to Whitelawn. This transaction is evidenced by a written contract between defendant and the customer, a copy of which is attached to the affidavit of Walter F. Browne, Vice President of defendant, which was made in support of the instant motion. The contract reveals that defendant was to pay a commission to plaintiff of ".02 lb. less actual freight costs pier or warehouse to buyer's plant" on the 26 truckloads provided for in the sales agreement.

The second cause of action alleges that "plaintiff again sold to Whitelawn Dairies, Inc. and the latter re-ordered 15 truckloads of butter fat product, approximately 38,500 pounds each truckload at a price of $.2175 per pound, and the defendant agreed to pay the plaintiff a commission of $.0175 per pound less actual freight of approximately $.004 per pound, or a net commission of $.0135 per pound." This transaction is also evidenced by a written contract between defendant and the customer, a copy of which is attached to the Browne affidavit. Plaintiff contends that it was never paid a commission for this transaction.

As to the first and second causes of action there are written memoranda signed by defendant acknowledging that plaintiff is to be paid a commission for the transactions between defendant and Whitelawn. Accordingly, there is no valid statute of frauds defense to the first and second causes of action. The only dispute between the parties is whether defendant has fulfilled its obligation to plaintiff as set forth in the sales agreements. At oral argument counsel for defendant asserted that the phrase "actual freight costs pier or warehouse to buyer's plant" contemplated that the freight costs from Europe to New York, in addition to local freight costs, would be deducted from plaintiff's commission. This dispute raises an issue of fact to be determined at trial. In any event, defendant's motion for summary judgment only pertains to the third and fourth causes of action alleged in the complaint.

The third cause of action asserts that "plaintiff was responsible for the sale to Whitelawn Dairies, Inc., of an additional six truckloads of butter fat product of 38,500 pounds each, at a price of $.2175 and that the defendant agreed to deliver such six truckloads and agreed to pay plaintiff $.0175 commission, less $.004 local freight, or a total of $.0135 per pound." It is contended by plaintiff

that although duly demanded no part of its commission has been paid for this transaction.

The *fourth cause of action* states in pertinent part as follows: "By reason of the efforts of the plaintiff, Whitelawn Dairies, Inc. entered into a further contract with the defendant, for the delivery of an additional 10 truckloads of 38,500 pounds of butter fat product each, and upon information and belief such sale has been satisfied and confirmed by defendant . . . .' " Plaintiff asserts that it is entitled to "a commission of $.0175 per pound less $.004, or a total $.0135 on 385,000 pounds" no part of which has been received.

With respect to the third and fourth causes of action neither party has furnished the court with any written sales agreement between defendant and Whitelawn reflecting the transactions set forth in the complaint or indicating that plaintiff is entitled to a commission on these transactions. Although defendant denies any liability to plaintiff regarding these transactions, it admits that it sold "goods, wares and merchandise to Whitelawn."

 Leave to amend the answer to assert the statute of frauds as an affirmative defense was granted at oral argument. (Tr. at 18). In relevant part Rule 15(a) provides: "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires*. (emphasis added) Addressing this provision in Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), Mr. Justice Goldberg stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amend-

ment, etc.—the leave sought should, as the rules require, be "freely given." 371 U.S. at 182, 83 S.Ct. at 230. *See generally* 3 J. Moore, Federal Practice ¶ 15.08 [2] (2d ed. 1964). Since the court believes that none of the factors militating against granting leave to amend as stated by Justice Goldberg are presented by the instant application, the court reaffirms its decision from the bench to allow the amendment. Although defendant has never formally filed or served an amended answer, the court will deem the answer amended. The court's action in this regard is predicated on its belief that a motion for summary judgment may be granted on a defense not pleaded in the answer. In Roloff v. Arabian American Oil Co., 421 F.2d 240 (2d Cir. 1970), the court of appeals stated that the district judge had not abused his discretion in granting a motion for summary judgment on a ground not pleaded in the answer. 421 F.2d at 242. Speaking for a unanimous panel, Judge Smith articulated this point as follows:

> In opposition to the motion for summary judgment, Roloff contended that the workmen's compensation defense had been waived by not being pleaded, but the court granted the motion. By granting summary judgment Judge Palmieri in effect allowed an amendment to the company's pleading since that new defense was the basis of the motion for summary judgment. There was no abuse of discretion in allowing such an amendment to raise the defense that an issue was being litigated in an improper forum.

421 F.2d at 242.

 It is significant to note that until the afternoon of the oral argument on defendant's motion, plaintiff failed to file any papers in opposition. Immediately before the argument plaintiff's counsel submitted his own two and a half page affidavit in opposition to the motion. The court refused to accept it.

Even if accepted, the affidavit was deficient under Fed.R.Civ.P. 56(e), which is set out in the margin.[1] Speaking about the type of affidavit required under this rule, Professor Moore states that: "This affidavit must be made on the personal knowledge of the affiant, set forth facts that would be admissible in evidence, and show affirmatively that affiant is competent to testify to the matters stated therein." 6 J. Moore, Federal Practice ¶ 56.22 [1], at 2303 (2d ed. 1965) (footnote omitted). The affidavit of plaintiff's counsel is deficient in all respects under this standard and has no probative value for purposes of this motion.

In addition to filing an untimely, deficient affidavit in opposition, plaintiff's counsel failed to comply with Local General Rule 9(g), which provides as follows:

> (g) Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

■ In compliance with Local Rule 9(g) defendant submitted a statement of material facts as to which it contends there exists no genuine issue to be tried. Plaintiff failed to file an opposing 9(g) statement. Accordingly, under the rule the material facts set forth in defendant's 9(g) statement "will be deemed to be admitted." Grissman v. Union Carbide Corp., 279 F.Supp. 413, 415, 417 (S.D.N.Y.1968).

In its Rule 9(g) statement defendant states there is no genuine issue to be tried with respect to the following material facts:

1. The third and fourth causes of action of the complaint are based upon an alleged agreement, promise or undertaking, made by defendant on or about January 9, 1970, to pay plaintiff a commission on all future sales by defendant to Whitelawn Dairies, Inc. of "butter fat product", as alleged in paragraphs SIXTH and SEVENTH of the complaint.

2. Defendant denies the existence of the foregoing agreement.

3. The foregoing agreement, promise or undertaking by its terms is not to be performed within one year from the making thereof.

4. Neither the foregoing agreement nor any note or memorandum thereof was ever made in writing and subscribed by defendant or its lawful agent.

---

1. Rule 56(e) states:

(e) *Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendant predicates its motion for summary judgment on N.Y.Gen.Oblig. Law § 5–701(1) (McKinney 1964), which provides as follows:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime;

In support of its contention that plaintiff's third and fourth claims are barred by the above provision of the statute of frauds, defendant relies on Urvant v. IMCO Poultry Inc., 325 F.Supp. 677 (E. D.N.Y.1970), *aff'd per curiam*, 440 F.2d 1355 (2d Cir. 1971) and the excellent discussion of New York case law contained in Judge Dooling's well-reasoned opinion. In *Urvant*, which was decided under the predecessor statute to N.Y. Gen.Oblig.Law § 5–701(1) (McKinney 1964),[2] Judge Dooling found that there was an oral agreement which provided that plaintiff (agent) was to receive a commission on sales made by defendant to a customer introduced by plaintiff as long as the customer "continued as a customer [of defendant]." 325 F.Supp. at 679. In *Urvant*, however, it was clear that defendant could terminate plaintiff's employment as agent at any time and that it could refuse to fill orders placed by plaintiff or by customers procured by plaintiff. Notwithstanding this agreement, the court found that plaintiff had a continuing right under the oral agreement to continue in perpetuity to receive commissions on all orders filled by defendant. Judge Dooling articulated this conclusion as follows:

> If plaintiff and defendant elected all the terminating alternatives that

were in their control within a year, the critical promise, the one sued on, necessarily survived by its terms unimpaired to constrain the defendant's freedom of action and as a continuous investiture of right in plaintiff: when at any time a customer introduced by plaintiff proffered an order to the defendant, the defendant had either to accept that order and pay the commission or forego the order, no matter how acceptable it was in commercial terms; plaintiff continuously possessed the correlative right to the commissions on every accepted order even though he had no right to insist that any order be accepted. The contract did not mean that one rejection of an order by defendant freed him from the promise and enabled him either to reject the next order or to accept it without paying a commission.

325 F.Supp. at 682.

The case at bar is less complex. Under paragraph one of defendant's Rule 9(g) statement, which is deemed admitted, and under paragraphs six and seven of the complaint, the alleged oral agreement contemplated that plaintiff would be paid a commission on all re-orders placed by the customer procured by plaintiff. There was no time limitation.

■ The essence of New York case law under the statute was distilled by Judge Dooling in the following statement:

> The cases are insistent that the Statute applies where nothing in the commission contract contemplates its fulfillment within a year and no term or event controlled by the parties will bring the contract to an end with its promises discharged.

325 F.Supp. at 685–686. In the case at bar, the agreement, encompassing as it did all future sales by defendant to Whitelawn, cannot be said to have been terminable within one year. Additional-

---

2. N.Y.Pers.Prop.Law § 31 (McKinney 1962). For a discussion of the history of this stat-
ute see, Yonofsky v. Wernick, 362 F. Supp. 1005, 1029, n. 70 (S.D.N.Y.1973).

ly, under the alleged agreement it is clear that plaintiff's right to receive commissions continued independently of any further act by it. As long as Whitelawn purchased butter fat from defendant, plaintiff was entitled to be paid. Accordingly, there was "no term or event controlled by the parties" that could have terminated the agreement so as to bring it outside the scope of the statute of frauds. Consequently, plaintiff's third and fourth causes of action are barred by the statute of frauds. As Judge Dooling so aptly stated: "It is important to recall that . . . 'perpetual' promises are valid and enforceable . . .; it is because they are valid that they raise the Statute of Frauds question." 325 F.Supp. at 686.

Accordingly, defendant's motion for summary judgment with respect to the third and fourth causes of action alleged in the complaint is granted.

So ordered.