John C. MacMURRAY, Executor of the
Estate of Marguerite M.
Mayden, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 217–86C.

United States Claims Court.

Aug. 11, 1988.

W. Eugene Henry, Biloxi, Miss., for plaintiff.

Howard Lipper, Washington, D.C., with whom Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

Plaintiff, John C. MacMurray, in this military benefits pay case, initially brought suit, in 1984, in the Chancery Court of the

Second Judicial District of Harrison County, Mississippi. There he sought a declaration that his missing sister, Marguerite M. Mayden, was still living. Said suit was initiated after the monthly payments that his sister had been receiving, as a result of her husband's death, from both the Air Force, under the Survivor Benefit Plan annuity program (SBP) ($757.80), and the Department of Health and Human Services ($237.00), had been suspended because of her disappearance. Initially, Mr. MacMurray had endeavored to challenge these payment suspensions administratively. But after no action was taken by either agency, he turned to the courts.

The United States, defendant herein, later by motion removed the state court action to the United States District Court for the Southern District of Mississippi in October, 1984. After removal, plaintiff amended his complaint to pursue receipt of the suspended payment amounts from both agencies. The District Court, as a consequence, found that under the Tucker Act, 28 U.S.C. § 1346(a)(2), the amounts involved in Mr. MacMurray's original claim, being over $10,000, was beyond its statutory jurisdiction.[1] Therefore, that court transferred the case to the Claims Court on April 1, 1986.

In this court, plaintiff MacMurray, as the duly appointed conservator of the estate of the missing Ms. Mayden, first requested a finding of entitlement to both back and future payments from both the Air Force and the Department of Health and Human Services. However, in the interim, and before any issues could be resolved, seven years expired from the date of Ms. Mayden's disappearance (*i.e.*, on or about May 1, 1980), or as of May 1, 1987. Consequently, on an appropriate petition, the Chancery Court of Harrison County, Mississippi, thereafter entered an order on May 5, 1987, declaring Ms. Mayden to be legally dead. Mr. MacMurray, now as the duly appointed executor under Ms. Mayden's will, presently seeks the back payments stemming from survivor annuity and social security benefits due from both agencies on behalf of Ms. Mayden's estate up to the day prior to her *presumed* demise.

With the foregoing procedural history squarely in mind, this court now has under consideration four motions: (i) plaintiff's motion for summary judgment; (ii) plaintiff's motion to strike; (iii) defendant's motion for partial dismissal; and (iv) defendant's partial cross-motion for summary judgment.[2] Without oral argument and for the reasons given below, the court finds that it must grant defendant's partial motion to dismiss with regard to plaintiff's prayer for social security benefit payments; grant plaintiff's motion to strike; deny defendant's partial cross-motion for summary judgment; and grant plaintiff's motion for summary judgment in part, with respect to his Survivor Benefit Plan annuity claim, but only with regard to *liability*. The quantum issue is reserved for a separate proceeding.

*Facts*

At his military retirement in 1967, the husband of Marguerite M. Mayden, Colonel James D. Mayden, elected to participate in the Air Force retirement program, *i.e.*, the Survivor Benefit Plan (SBP). The SBP,

---

1. 28 U.S.C. § 1346 (1982) states in pertinent part as follows:

§ 1346. United States as defendant
(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:
* * * * * *
(2) Any other civil action or claim against the United States, *not exceeding $10,000 in amount,* founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that

the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978....
(emphasis added).

2. The court notes that, in the context of the complex procedural evolution of this case, defendant failed to file an answer prior to filing its partial cross-motion for summary judgment. Notwithstanding, we find this omission to be non-prejudicial.

codified at 10 U.S.C. §§ 1447–1455 (1982), provides that the retiree's surviving spouse *shall* receive a monthly annuity *while the surviving spouse remains alive. Id.* at § 1450. Accordingly, Ms. Mayden began receiving annuity payments after her husband died in 1976. Moreover, Ms. Mayden also began receiving widow's benefits from the Social Security Administration by reason of her husband's death. The Veterans Administration also made certain benefit payments to Ms. Mayden.

Following thereon, in early May 1980, Ms. Mayden mysteriously disappeared from her home in Biloxi, Mississippi. Two neighbors, Louis Balius and L.L. Bone, saw Ms. Mayden on May 1, 1980, as she drove past them in her car near her home; they swore that she was acting normally and was under no duress (Plaintiff's Motion for Summary Judgment Ex. 3). Apparently, from the evidence before this court, Messrs. Bone and Balius were the last persons to see Ms. Mayden prior to her disappearance.

Following Ms. Mayden's disappearance, the Biloxi Police Department conducted an investigation of her home on May 2, 1980. Additionally, the family hired a private investigator to continue the search for Ms. Mayden. As to the condition of Ms. Mayden's residence soon after her disappearance, both parties agree that blood was present in the house. Further, there is uncontroverted evidence submitted by defendant that Ms. Mayden's car was also missing from her house and found by police later abandoned at a local motel.

Following the disappearance, plaintiff here, John C. MacMurray was appointed conservator of his sister's estate in July, 1980 by the Chancery Court of Harrison County, Mississippi. As conservator, MacMurray served as a custodian to manage the estate of his missing sister. In this capacity, MacMurray received payments from the SBP, the Social Security Adminis-

tration, and the Veterans Administration on behalf of Ms. Mayden during 1980. However, in February, 1981 the Air Force suspended the monthly payments due Ms. Mayden, and in December, 1981 the Social Security Administration did likewise. The suspension of the annuity payments by the Air Force came after MacMurray, in his capacity as custodian, submitted the annual Certificate of Eligibility for 1981 on behalf of Ms. Mayden as required by Defense Department regulations.[3] On May 5, 1987, the Chancery Court declared Ms. Mayden legally dead, accepted her will into probate, and appointed MacMurray as executor of her estate. Thereafter, and pursuant to motion, plaintiff as executor was substituted for plaintiff as conservator before this court.

## Contentions of the Parties

### A. Plaintiff

MacMurray bases his motion for summary judgment, regarding his entitlement to the back payment on behalf of the estate of Ms. Mayden of the SBP annuity, on the presumption of continuing life from Ms. Mayden's disappearance (May 1, 1980) up to the point one day prior to the expiration of the seventh year. As of the next day, the Chancery Court declared Ms. Mayden, by reason of her unexplained and continuous absence for seven full years, to be legally dead. Premised on its motion to strike, plaintiff challenges certain pieces of evidence proffered by the defendant to rebut the presumption of continuing life. Furthermore, plaintiff argues that his submission of the Certificate of Eligibility in 1981 to the Air Force, as the custodian of Ms. Mayden's estate, was in accordance with the regulations, and, therefore, the suspension of payments was legally erroneous. With reference to the Social Security claim, plaintiff admits that the case may not be properly in this court, *i.e.*, there is a want of jurisdiction, but seeks to persuade

---

**3.** Department of Defense (DOD) Manual 1340.-12–M (March 16, 1984), Chapter 9 (Certificate of Entitlement And Report of Existence), Section A (Annual Certificate of Eligibility), para. 90902 (Frequency of Certification), states in pertinent part as follows:

a. Annually. Each year the eligible spouse or custodian or legal fiduciary for a minor child must submit a certificate of eligibility to the service finance center.

the court to retain said case as a claim subordinate to the Air Force annuity claim over which this court has jurisdiction, as both claims involve the same facts and the same issues.

### B. Defendant

In its partial motion to dismiss, the United States maintains, of course, that the social security claim of plaintiff is outside of the jurisdiction of this court due to a congressional grant of *exclusive* jurisdiction to the United States district courts. Regarding the annuity claim under the SBP, defendant urges the court to find that the evidence it has submitted persuasively overcomes the presumption of continuing life, as relied on by plaintiff. And, moreover, defendant contends that Ms. Mayden actually died on or about the date of her disappearance, *i.e.*, May 1, 1980. Further, defendant endeavors to resist plaintiff's motion to strike by arguing that the evidence that it has submitted in support of its cross-motion would be admissible at trial. Finally, the United States argues that the suspension of the annuity payments was consistent with valid regulations since Ms. Mayden failed to submit the mandatory Certificate of Eligibility. The implication here, of course, is that the regulations permit the *surviving annuitant,* only, to submit said certificate.

### Issues

In deciding the motions now before the court, we must focus on the following issues: (i) whether this court has jurisdiction over plaintiff's Social Security claim; (ii) whether plaintiff has met his burden under Rule 56(c) of showing that there are no genuine issues of material fact surrounding his summary judgment motion on the liability issue and that he is entitled to judgment as a matter of law; (iii) whether the contents of the affidavits and police reports submitted by defendant are admissible under Rule 56(e); and (iv) if these documents are admissible, has defendant made a sufficient creditable showing to rebut the legal presumption of continuing life that plaintiff relies on in his summary judgment motion.

### Discussion

### I. *The Social Security Claims*

 Plaintiff, as the conservator of his missing sister's estate, collected benefits from the Social Security Administration until the payments were suspended in December, 1981. Now, by this action, MacMurray seeks to challenge the suspension in this court, even though he admits that there has never been a hearing, a final determination, or a written decision by the Social Security Administration issued to him regarding the suspension of the monthly payments. Further, given the transfer of the social security claim to this court along with the Air Force survivor benefit annuity claim by the district court, plaintiff now urges this court to retain jurisdiction over the former claim as one "subsidiary" to the Air Force annuity claim.

Defendant, on the other hand, strongly challenges our power to decide plaintiff's social security claim. This is so, explains defendant, because the Social Security Act, at 42 U.S.C. §§ 405(g) and (h), clearly establishes exclusive jurisdiction in the United States district courts for challenges under that Act.

In that connection, § 405(g) provides, in pertinent part, as follows:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. *Such action shall be brought in the district court of the United States* for the judicial district in which the plaintiff resides or has his principal place of business....

(emphasis added).

Further, § 405(h) provides, in pertinent part, that:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. *No findings of fact or decision of the Secretary shall be re-*

*viewed by any person, tribunal, or governmental agency except as herein provided.*

(emphasis added).

In the face of the clear and unambiguous language of said statutory provisions, *supra*, plaintiff nevertheless urges this court to retain jurisdiction of its social security claim as one subsidiary or ancillary to the Air Force annuity claim. *Town of North Bonneville, Washington v. United States District Court, Western District of Washington*, 732 F.2d 747 (9th Cir.1984), is cited to by plaintiff as authority for his position. In *North Bonneville*, the Ninth Circuit considered a mandamus action which challenged the transfer of cases from the district court to the Claims Court. The Ninth Circuit held that cases over which the district court had original jurisdiction by statute could *not* be transferred to the Claims Court and that the transfer of this type of case was improper. Further, only those claims that did not involve a *statutory grant* of jurisdiction and specifically involved relief tied to and subordinate to a monetary claim could be transferred. Therefore, it seems clear beyond cavil that *North Bonneville* gives plaintiff no comfort in his argument because here, in the case at bar, there is a specific statutory grant of jurisdiction of the social security claim in the district court under the Social Security Act, 42 U.S.C. §§ 405(g) and (h). Additionally, the social security claim is a separate claim under a different statute, and such claim is not tied to relief under the SBP annuity claim. Thus, we find that the social security claim must be returned to the District Court for the Southern District of Mississippi inasmuch as we determine that this court does not have jurisdiction over said claim(s) and, moreover, we cannot have jurisdiction conferred upon us by another court. *See Diamond v. United States*, 228 Ct.Cl. 493, 657 F.2d 1194 (1981).

## II. *The Survivor Benefit Plan Annuity Claim*

On the issue of the SBP annuity entitlement, the court has several motions before it for decision. These include plaintiff's summary judgment motion, defendant's partial cross-motion for summary judgment, and plaintiff's motion to strike portions of defendant's evidence proffered in support of its (defendant's) cross-motion under Rule 56(e). We shall proceed to examine each party's summary judgment motion separately and rule on plaintiff's motion to strike in the context of the analysis of defendant's cross-motion.

### A. Plaintiff's Summary Judgment Motion

In seeking to recover from the government the suspended SBP annuity payments, which allegedly accrued from the date of her disappearance (1981) to one day short of seven years therefrom (1987), and following thereafter Ms. Mayden was declared legally dead, plaintiff must establish two operative facts: (i) that these annuity payments were legally due the estate of Ms. Mayden; and (ii) that Ms. Mayden was deemed to have lived for the entire period, *i.e.*, one day short of seven years from her disappearance in May 1980, as these benefits are only paid while the annuitant is living. 10 U.S.C. § 1450(b).

▆▆ Said showing must, of course, be made in the context of the standard for summary judgment pursuant to Rule 56(c). In that connection, all materials filed with the court must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. At the threshold stage of a summary judgment motion, the judge's function is not to determine truth through weighing conflicting evidence, but rather it is simply to determine whether the movant has met his burden, or whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment should *only* be granted when it is clear what the unvarnished truth is. *Westlake v. Abrams*, 565 F.Supp. 1330, 1337 (N.D.Ga. 1983). That is to say, the court's function is to consider the evidence to determine *whether* genuine issues of material fact exist, and *not* to decide the material conflicting fact issues themselves. *United*

*States, ex rel Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir.1971). *See also F.A.R. Liquidating Corp. v. Brownell,* 209 F.2d 375 (3d Cir.1954). But *prior* to determining the existence of material fact issues from the affidavits and other data filed in support of the summary judgment motions, the court must first resolve the threshold issue of the admissibility of the statements contained in the affidavit, etc. under Rule 56(e) and (f). *United States v. Hangar One Inc.,* 563 F.2d 1155 (5th Cir.1977), *reh'g denied,* 1978. Affidavits that do not meet the standard of Rule 56(e) and (f), of course, have no probative value for purposes of the summary judgment motion. *Blossom Farm Products v. Amtraco Commodity Corp.,* 64 F.R.D. 424 (S.D.N.Y. 1974).

To reiterate, *supra,* plaintiff must establish in its motion that (i) the claimed payments were due Ms. Mayden throughout this seven-year period, and (ii) Ms. Mayden, despite her mysterious disappearance, was also alive during the subsequent seven-year period and just prior to the state court ruling on her death in 1987.

### 1. Are Any Back SBP Annuity Payments Due The Estate of Ms. Mayden?

The Department of the Air Force, in its letter to MacMurray dated August 4, 1987, admits that the SBP annuity program, established by law, constitutes a claim that may be enforced by the annuitant and that on the annuitant's death, claim(s) pass to the legal representative who may secure payment to the estate of the deceased of any due and unpaid amounts. Plaintiff's Motion for Summary Judgment Exhibit 5 states as follows:

It has been determined by this Office that the SBP annuity is a payment authorized by law to be paid to the person entitled to receive it and constitutes a claim which may be enforced by such person. The claim is not reduced by the

death of the person having the claim but passes to his legal representative, who can prosecute it to judgment. Therefore amounts which are due and unpaid at the annuitant's death may be paid to the estate of the deceased. 54 Comp.Gen. 493.

*See also* DOD Manual 1340.12–M, Part 7, Chapter 2. Thus, MacMurray, as Ms. Mayden's legal representative, may enforce the estate's claim to any due and unpaid annuity amounts.

To determine whether there exist any "due and unpaid" annuity payments, we must turn to the Department of Defense regulations. The applicable regulations governing the continued eligibility of annuitants are found in DOD Manual 1340.12–M, Part 9, Chapter 9, Section A. Under these regulations, the annuitant, custodian, or legal fiduciary is required to *annually* submit a certificate of eligibility to the Air Force. *Id.* at para. 90902.[4] Failure to furnish the certificate results in the suspension of the payments *until* satisfactory proof of eligibility is made. *Id.* at para. 90903.[5]

Plaintiff claims to have satisfied the foregoing requirement of submitting the eligibility certificate *as the conservator* of Ms. Mayden's estate. We agree because, in his capacity as conservator, MacMurray serves as a custodian. Within the decree of the Chancery Court appointing MacMurray as a trustee, the court found that the facts before it, as to the disappearance of Ms. Mayden and her continued unknown whereabouts, served as a basis for the legal conclusion that Ms. Mayden was "physically infirm and unable to care for herself, conserve her interests, or conduct her business." Decree No. 10159, Chancery Court of Harrison County, Mississippi, Second Judicial District (July 30, 1980). Therefore, the Chancery Court appointed MacMurray to manage her estate and entrusted her

---

**4.** Paragraph 90902 states in pertinent part as follows:

 a. Annually. Each year the eligible spouse or custodian or legal fiduciary for a minor child must submit a certificate of eligibility to the service finance center.

**5.** Paragraph 90903 states as follows:

 The annuity payment is suspended if the annuitant, custodian, or legal fiduciary fails to furnish the certificate as required. Payments are restarted only after receiving satisfactory proof of eligibility.

assets to him. Additionally, Black's Law Dictionary defines a custodian as one "who has charge or custody of property, papers, etc." Clearly, MacMurray fits within this definition as he was placed in charge of Ms. Mayden's property and documents by the Chancery Court. Therefore, based on the findings of the Chancery Court cited above, we hold that MacMurray was acting in the capacity of custodian pursuant to the DOD regulations when he signed and returned the certificate of eligibility on or about February 18, 1981.

■ Thus, from the uncontroverted record now before us, we find that the requisite eligibility certificate was appropriately filed *for the calendar year 1981*, and that the annuity payments were due and payable monthly to plaintiff, Ms. Mayden's duly appointed custodian, *for that year*. On the other hand, we find nothing in the record that indicates whether MacMurray submitted an appropriate eligibility certificate for each subsequent year, including the year of the adjudication of death, *i.e.*, 1982 to 1987. Therefore, we are constrained to find that such circumstance generates a genuine issue of material fact as to—whether, indeed, subsequent eligibility certificates were in fact submitted to the service finance center as required; and whether any monthly payments are presently due Ms. Mayden's estate *after the calendar year 1981*. This fact issue precludes the court from ruling on the quantum of damages in this case beyond the calendar year 1981.

### 2. *Was Ms. Mayden Alive During The Seven Years At Issue?*

■ To prove that Ms. Mayden was alive during the seven years following her disappearance, plaintiff relies on the statutory legal presumption of death that arises at the *end* of the seven years of continuous unexplained absence and that was the basis of the Chancery Court's decree of May 5, 1987, declaring Ms. Mayden to be deceased. Plaintiff argues that the statutory presumption of death does not set the *specific* time of death and, therefore, results concomitantly in the converse presumption of

continued life during and throughout the seven years of absence. In short, Mr. Mac-Murray relies on the Chancery Court's decree of death—that as of May 5, 1987, Ms. Mayden was legally dead—to trigger the presumption of continued life up to May 5, 1987.

The Chancery Court declared Ms. Mayden legally dead consistent with the statutory presumption contained in the Mississippi Code of 1972 at § 13-1-23. This statute provides that:

> Any person who shall remain beyond the sea, or absent himself from this state, or conceal himself in this state, for seven years successively without being heard of, shall be presumed to be dead in any case where his death shall come in question, unless proof be made that he was alive within that time.

Said presumption of death found operative by the Chancery Court is a *legal* presumption pursuant to the law of the state of Mississippi based on MacMurray's satisfactory proof of Ms. Mayden's unexplained absence for seven continuous years. The party bearing the burden of proof on the issue of establishing death can rely on the legal presumption to establish a prima facie case. *Midgett v. United States,* 221 Ct.Cl. 171, 603 F.2d 835 (1979). A state court judgment must be given the same force and effect by a federal court as by the state in which it was rendered. 28 U.S.C. § 1738 (1982). *Id.* at 189, 603 F.2d at 845. Thus, we are bound to acknowledge that the presumption of death regarding Ms. Mayden was operative as of May 5, 1987. The statutory legal presumption is rebuttable by specific factual proof; and when credible proof is offered, the presumption disappears and a fact question arises. *Id.* at 190, 603 F.2d at 846. However, the precise time of death is not established by the legal presumption that Ms. Mayden was deceased at the end of the seven years, and the party (here the defendant) who seeks to benefit from establishing a time specific for the death bears the burden of proving that death occurred at a specific time within the seven years of absence. *Id.*

From the legal presumption of death, plaintiff here relies on *Acosta v. United States*, 162 Ct.Cl. 631, 320 F.2d 382 (1963), to establish that Ms. Mayden was alive *continuously* for the seven years up to her statutorily presumed date that she was no longer alive. In *Acosta*, the wife of a retired serviceman obtained a decree of death from a California state court after her husband had disappeared and whose whereabouts were unknown for seven continuous years. The wife brought suit in the Court of Claims to obtain her husband's retirement pay for the period of his disappearance up to the date of the state decree of death. As in the case now before the court, the plaintiff in *Acosta* had to show that her husband remained alive during the seven years of his disappearance because the retirement pay, like the SBP annuity payments, was only payable while the recipient remained alive. *Acosta*, 162 Ct.Cl. at 635, 320 F.2d at 384.

In the face of the government's argument that the wife must fail because the state death decree *only* operated to support a presumption that the missing husband was *dead* by the end of the seven years, and not that he was presumed to have died on the last day of the seventh year, the *Acosta* court held that "in pay claims against the Federal Government the normal presumption should be that death occurred at the *end* of a seven-year period of continued and unexplained absence." *Id.* at 636, 320 F.2d at 385. Thus, a presumption of continued life arises from the date of the disappearance up to the end of the last day preceding the 365th day of the seventh year at which the statutory presumption of death surfaces.

Like the presumption of death, the presumption of continued life is rebuttable by creditable evidence that death occurred earlier, *i.e.*, by evidence that the missing person "encountered some *specific* peril" or "came within the range" of some impending fatal danger. *Davie v. Briggs*, 97 U.S. 628, 634, 7 Otto 628, 24 L.Ed. 1086 (1878). But, when the evidence proffered to rebut said presumption is legally deficient, then the court should, in such case, rule that the missing individual died at the *end* of the

seven-year period of absence. *Acosta*, 162 Ct.Cl. 636, 320 F.2d at 385.

The *Acosta* court applied the rebuttable presumption of continued life up to the end of the seven-year period of absence, following the intent of Congress as demonstrated by the Act of 1942, 56 Stat. 325 presently Title 38 U.S.C. § 108 (1982), to avoid inconsistent results and gaps in the administration of military benefits. *Id.* Concurring with the rationale of the *Acosta* court, we are therefore constrained to hold that a rebuttable presumption of life continues here up to the *end* of the period of seven years of absence and obtains in the case of missing annuitants under the SBP program. Thus, by relying on the state court decree of death, MacMurray has triggered the legal, rebuttable presumption of continued life up to the end of the seven-year period. Therefore, plaintiff has duly made a prima facie case of entitlement to the back payment of the suspended annuities, and the burden of producing specific factual evidence in rebuttal shifts to defendant. Because we find, for the reasons detailed below, that defendant's evidence is insufficient to overcome the legal presumption of continued life for the seven-year period, we must grant plaintiff's motion for summary judgment in part, as it applies to liability for payment of the suspended Air Force annuity. However, as stated above, the specific quantum of damages is yet to be established by plaintiff and is subject to compliance with the submission of appropriate eligibility certificates for each year in issue.

## B. Defendant's Partial Cross–Motion And Plaintiff's Motion To Strike

■ We next address defendant's partial summary judgment motion claiming that it has submitted incontrovertible probative evidence that persuasively overcomes the presumption of continued life in Ms. Mayden's case after her mysterious disappearance on or about May 1, 1980. In meeting its burden, both under the summary judgment standard and in rebutting the operative presumption of continued life for the seven-year period, defendant depends, by

and large, on the unsworn declaration of Robert Payne, who was the then Chief of Detectives for the Biloxi Police Department at the time of Ms. Mayden's disappearance.[6] Additionally, defendant has submitted two police reports, alleging that they document the investigation of Ms. Mayden's mysterious disappearance.

Plaintiff challenges the efficacy of the evidentiary material proffered by defendant in support of its partial cross-motion by moving to strike portions of Detective Payne's declaration under Rule 56(f) of the U.S. Claims Court. The premise of his position is that these disputed declarations are not based on personal knowledge, are hearsay, are comprised of rank opinions, and, moreover, are inadmissible conclusions.

Rule 56(f) provides, in pertinent part, as follows:

> Supporting and opposing affidavits *shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.[7]

(emphasis added).

As is evident from the above, the threshold question of admissibility of proffered evidence must be resolved prior to finding issues of fact or the court's ruling on the motion. *United States v. Hangar One, Inc.,* 563 F.2d 1155 (5th Cir.1977), *reh'g denied,* 1978. Moreover, affidavits that fail to satisfy the foregoing three-prong test of Rule 56(f) have *no* probative value in deciding a summary judgment motion. *Blossom Farm Products v. Amtraco Commodity Corp.,* 64 F.R.D. 424 (S.D.N.Y. 1974).

Rule 56(f) sets out three tests to determine whether the contents of an affidavit supporting a summary judgment motion contains admissible evidentiary facts and may be considered by the court. First, under Rule 56(f), the party's affidavit *shall* be made on "personal knowledge." Stated differently, the court may *not* consider affidavits in support of summary judgment motions that were *not* made based on the affiant's personal knowledge. *Union Insurance Society of Canton, Ltd. v. Gluckin,* 353 F.2d 946 (2d Cir.1965). Affidavits expressing opinions based on reports, without averring personal knowledge, do not set forth facts that would be admissible at trial. *Arkansas–Best Freight System Inc. v. Youngblood,* 61 F.R.D. 565 (W.D.Ark. 1974). Second, the statements set forth in the affidavit must be facts that would be admissible in evidence in order to comply with Rule 56(f). That is to say, bland conclusory statements are not admissible evidentiary facts and do not comply with the requirements of Rule 56(f). *Id.* at 952. Third, the affidavit must show affirmatively that the affiant is competent to testify to the matters stated in said affidavit under Rule 56(f).

If an affidavit does not meet *all* three of the above tests, since Rule 56(f) is in the

---

6. 28 U.S.C. § 1746 provides that unsworn declarations under penalty of perjury may substitute for affidavits:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> \* \* \* \* \* \*
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

7. The language of Rule 56(f) of the United States Claims Court tracks the language of Rule 56(f) of the Federal Rules of Civil Procedure; therefore, the cases interpreting Rule 56(f) of the Federal Rules of Civil Procedure are applicable in interpreting Claims Court Rule 56(f).

conjunctive, it is subject to a motion to strike. *McSpadden v. Mullins,* 456 F.2d 428, 430 (8th Cir.1972). However, the court shall only disregard the inadmissible portions of a challenged affidavit and shall consider all admissible portions in ruling on a summary judgment motion. *Lee v. National Life Assurance Co.,* 632 F.2d 524, 529 (5th Cir.1980). Even if a defect in an affidavit is not objected to in the motion to strike, the court may, *sua sponte,* consider that portion of an affidavit as well. *Williams v. Evangelical Retirement Homes,* 594 F.2d 701 (8th Cir.1979).

With the three-prong test of Rule 56(f) set out before us, the court now focuses on plaintiff's motion to strike defendant's affidavit of Detective Payne that contains statements regarding the perceived circumstances of the disappearance of Ms. Mayden. We grant said motion due to the failure of the challenged portions of the affidavit to meet the foregoing requirements of Rule 56(f). First, the affidavit makes no mention of *personal knowledge* by Detective Payne of the conditions existing at the residence of Ms. Mayden subsequent to her disappearance. The affidavit is primarily comprised of opinions based on the investigative work of others regarding the presence of human blood, signs of a struggle, human hair "microscopically similar" to Ms. Mayden's hair, the presence of human blood in the trunk of Ms. Mayden's car, and the "suspicious circumstances" of Ms. Mayden's disappearance. Nowhere does the declarant state that he has personal knowledge of the accuracy of the investigation upon which he bases his opinions. Additionally, there are no statements of personal knowledge regarding certain indicia found in Ms. Mayden's car. The affidavit contains numerous conclusions without statements of personal knowledge of the facts behind these conclusions. For example, Payne makes a bald conclusion, with no factual support, that the substance found in Ms. Mayden's house was human blood. Such statement does not meet the requirements of Rule 56(f). Further, defendant would rely on hearsay statements in the affidavit regarding the reputation of an alleged friend of Ms. Mayden as well as

hearsay statements regarding past acts of an alleged associate of the alleged friend. These incompetent hearsay statements also do not meet the requirements of Rule 56(f) as they are not admissible factual evidence. *See Barker v. Norman,* 651 F.2d 1107 (5th Cir.1981). Finally, nowhere in the declaration does the declarant (Payne) affirmatively show that he is competent to testify regarding the analysis of the substance found in Ms. Mayden's home or regarding the microscopic analysis of the hair allegedly found in Ms. Mayden's car.

After applying Rule 56(f), we find that only the following statements survive plaintiff's motion to strike:

(1) "Ms. Mayden's car was also discovered to be missing at the time of her disappearance. The car was recovered shortly thereafter at a local motel";

(2) "Based upon my experience as a police detective and my 17 years law enforcement experience and the investigative facts available to me, it is my opinion that Ms. Mayden's reported disappearance on or about May 2, 1980, was a result of a criminal act perpetrated against her occurring on or about May 1, 1980"; and

(3) "The attached police reports (two) and the letter of August 10, 1981, are accurate copies among documents which are maintained in the files of the Biloxi Police Department."

For the following reasons, we find that this remaining evidence does not meet the burden of going forward with substantial evidence to the contrary necessary to rebut the legal presumption of continuing life. *See O'Brien v. Equitable Life Assurance Society of United States,* 212 F.2d 383 (8th Cir.1954), *reh'g denied,* 1954.

First, the statement regarding the momentary disappearance of Ms. Mayden's car is not necessarily probative of any operative fact regarding Ms. Mayden's personal well-being. Second, the opinion statement, although prefaced by a statement of competency, is inadequate alone to support a holding in favor of defendant's summary judgment motion. Granting of a summary judgment motion based on opinions in an

affidavit is improper. *F.A.R. Liquidating Corp. v. Brownell*, 209 F.2d 375 (3d Cir. 1954). The court needs and requires a sufficient factual basis for the granting of summary judgment. *Blair Foods v. Ranchers Cotton Oil*, 610 F.2d 665 (9th Cir.1980). The declaration is conclusory and is unsupported by *admissible* facts. *See Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 729, 88 L.Ed. 967 (1944). Further, Payne does not state that he has first-hand knowledge of the circumstances of the disappearance, only of "investigative facts." Third, the certification of the two police reports and the letter of August 10, 1981, fail to support defendant's motion. While the certification opens the door for the court to consider the attached documents, an examination of those documents shows them to be unreliable. *See Cummings v. Roberts*, 628 F.2d 1065 (8th Cir.1980).

The first attached document, allegedly a police report, is unidentified on its face; one of the pages is missing; and the report contains statements comprised of layers of multiple hearsay. While the report, if it were properly identified as a police report, would be admissible as a business record, the statements contained within it made by non-police cannot be given the presumption of reliability and regularity accorded business records because the declarants were not acting in the regular course of business in making their statements to the police officers involved in the investigation. *United States v. Snyder*, 787 F.2d 1429 (10th Cir.1986), *cert. denied*, 479 U.S. 836, 107 S.Ct. 134, 93 L.Ed.2d 78 (1986). The second document attached to the declaration of Payne is likewise unreliable because, while the cover sheet identifies it as a service request for the Mississippi crime lab to perform an analysis of hair retrieved from Ms. Mayden's home, the narrative that followed does not represent such an analysis. Further, the narrative is also replete with multiple layer hearsay statements that must be found to be inadmissible as explained above. Moreover, the cited letter of August 10, 1981, is not included in the documents.

With the remaining admissible evidence of defendant before us, the court is constrained to find that defendant has not produced that substantial evidence necessary to overcome the presumption of life that is operative here. Therefore, we must deny defendant's partial cross-motion for summary judgment.

In conclusion, we note that defendant's pleadings are also insufficient to raise genuine issues of material fact that are necessary to defeat plaintiff's motion. The court cannot find a genuine issue for trial *unless* there is competent and adequate evidence favoring defendant, as the non-movant, for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To resist plaintiff's summary judgment motion, defendant must set forth *specific facts* showing that there is a genuine issue for trial. *Id.* at 248, 106 S.Ct. at 2510. Bald allegations and conclusory statements, if unsupported by specific facts, do not create a genuine issue of fact. *Westlake v. Abrams*, 565 F.Supp. 1330, 1338 (N.D.Ga.1983); *see also Barker v. Norman*, 651 F.2d 1107, 1130 (5th Cir. 1981). As stated above, we have found that defendant's admissible evidence does not meet the requisite standard of substantial evidence required to overcome the legal presumption of continued life; therefore, no jury could reasonably find for defendant in that no genuine issue of material fact surfaces. Finally, defendant's submissions fall short of constituting specific admissible fact statements. Thus, we must also find that defendant's supporting documents do not create a genuine issue of material fact for trial that would be the basis for denial of plaintiff's motion.

*Conclusion*

For all of the reasons stated above, the court hereby—grants defendant's partial motion to dismiss the social security claim; denies defendant's partial cross-motion for summary judgment; grants plaintiff's motion to strike; and grants plaintiff's summary judgment motion in part, as to the liability of defendant for back payment of the SBP annuity. Further, we hereby es-

**334**

tablish the following schedule for resolving the damages issue regarding the quantum due for back payment of the suspended SBP annuity:

(i) A telephonic status conference is hereby set for Monday, August 22, 1988, at 11 a.m. EDT (10 a.m. CDT).

(ii) The parties are to apprise the court at that time whether the quantum of damages issue can be definitively resolved by stipulation *without further proceedings;*

(iii) Failing such, the parties shall be prepared to advise the court how they wish to proceed to resolve the foregoing quantum issue(s); and

(iv) If a trial is required, the court intends to expedite same, which will be scheduled for 10 a.m., September 14, 1988, in Mississippi. The court will advise the parties at a later date as to the exact location. Pretrial submissions shall be filed on or before September 9, 1988.

Finally, inasmuch as it seems clear that the plaintiff's social security claim is within the jurisdiction of the U.S. District Court for the Southern District of Mississippi, pursuant to 42 U.S.C. §§ 405(g) and (h), said claim is hereby retransferred thereto. 28 U.S.C. § 1631.

IT IS SO ORDERED.